UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE BUCHWAL

13 CV 4633

------------------------------------------------------------

MADELEINE STANCESCU,                                Case. No.:

                                    Plaintiff,

                                                    **COMPLAINT**

          -against-
                                                    **Jury Trial Demanded**

ASSAEL INTERNATIONAL, INC. d/b/a ASSAEL INC.,
CHRISTINA LANG-ASSAEL, ANDRES BABIO, and
GITTY GOLDMAN,

                                    Defendants.
------------------------------------------------------------X

Plaintiff Madeleine Stancescu ("Plaintiff" or "Ms. Stancescu") by and through her

attorneys, SERRINS FISHER LLP, complains of Defendants Assael International, Inc. d/b/a

Assael Inc. ("Assael Inc." or the "Company"), Christina Lang-Assael, Andres Babio, and Gitty

Goldman (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. This action is brought to challenge Defendants' practice of religious discrimination, national

   origin discrimination, and retaliation in the terms, conditions, and privileges of Plaintiff's

   employment in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII"), New York State Human

   Rights Law, Executive Law § 296 *et seq.* ("NYSHRL") and New York City Human Rights

   Law, New York City Administrative Code § 8-101 *et seq.* ("NYCHRL").

2. Pursuant to § 8-502(c) of the NYCHRL, simultaneous with filing this complaint with the

   court, Plaintiff served a copy of this complaint on the New York City Commission on Human

   Rights and on the Corporation Counsel for the City of New York.



1

## JURISDICTION AND VENUE

3.  Plaintiff Stancescu, a resident of the State of New York, Queens County, filed a charge of discrimination against Defendant Assael Inc. with the Equal Employment Opportunity Commission (EEOC) on August 23, 2012, complaining of the acts of religious discrimination, national origin discrimination, and retaliation contained herein.

4.  Plaintiff complied fully with all administrative prerequisites to invoke the jurisdiction of this Court.

5.  On May 7, 2013, Plaintiff received her "right to sue" letter and this action was filed within 90 days of its receipt. (*See* Exhibit A attached hereto.)

6.  As the unlawful practices complained of herein occurred within the Southern District of New York, venue is proper within this district pursuant to 28 U.S.C. §1391 (b).

7.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (original federal question jurisdiction).

8.  Pursuant to 28 U.S.C. §1367, this Court has supplemental and pendant jurisdiction over all related state-law based claims. The events, parties, transactions and injuries that form the basis of Plaintiff's federal claims are identical to the events, transactions and injuries that form the basis of Plaintiff's claims that arise under the NYSHRL and NYCHRL.

## PARTIES

9.  Plaintiff Stancescu is of Armenian national origin and observes Armenian Orthodox religious practices.

10. Defendant Assael Inc. employed Plaintiff Stancescu from February 2005 to November 2011.

11. Upon information and belief, during relevant periods of Plaintiff's employment at Defendant Assael Inc., Defendants, particularly Defendant Goldman, perceived Plaintiff Stancescu to subscribe to the Muslim faith.

12. Defendant Assael Inc. is a domestic business corporation organized and existing under the laws of the State of New York and maintaining a principal place of business at 580 Fifth Avenue, 21st Floor, New York, New York 10036.

13. Defendant Assael Inc. is a family owned corporation, which has been in business for over fifty years, and engages in the sale of pearls and other precious stones to domestic and international jewelers.  Defendant Assael Inc. holds itself out to be the world's leading pearl house.

14. Upon information and belief, Defendant Christina Lang-Assael currently serves as Chief Executive Officer ("CEO") and Chairman of Defendant Assael Inc.

15. During the relevant periods of Plaintiff's employment with Defendant Assael Inc., Defendant Lang-Assael served as the President of the Company, maintained ownership interest in the Company, and exercised the authority to make personnel decisions.

16. Upon information and belief, Defendant Andres Babio currently serves as President of Defendant Assael Inc.

17. During the relevant periods of Plaintiff's employment with Defendant Assael Inc., Defendant Andres Babio served as Senior Executive Vice President of the Company and exercised supervisory authority over Plaintiff.

18. During the relevant periods of Plaintiff's employment with Defendant Assael Inc., Defendant Gitty Goldman served as Vice President of Sales for the Company and exercised supervisory authority over Plaintiff.

19. Defendant Assael Inc. employs more than fifteen (15) people for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and is an employer within the definition of Title VII, the NYSHRL, and the NYCHRL.

20. In addition to their professional capacities, Defendants Lang-Assael, Babio, and Goldman may be held individually liable under the NYSHRL and NYCHRL as employers given that the Defendants either had ownership interest and/or power to do more than carry out personnel decisions made by others.

21. Defendants Lang-Assael, Babio, and Goldman, at relevant times recommended, partook, or otherwise participated in the adverse actions against Plaintiff and therefore aided and abetted in the discriminatory and/or retaliatory acts against Ms. Stancescu.

22. Defendants at all relevant times mentioned herein were the agents, servants, and/or employees of each other Defendant and each other Defendant was acting within the course and/or scope of his or its authority as the agent, servant, and/or employee of each other Defendant.  Consequently, all the Defendants served as joint employers of the Plaintiff and may be held jointly and severally liable to the Plaintiff for the losses sustained as a proximate result of their conduct.

## FACTUAL ALLEGATIONS

### *Plaintiff's Employment with Defendants*

23. Defendant Assael Inc. recruited and then hired Plaintiff on February 28, 2005 as the Company's Director of Advertising, Marketing, and Sales.

24. Plaintiff was hired by Salvador Assael, who took over the operations of the Company in 1972.

25. Mr. Assael served as the CEO of Defendant Assael Inc. until his death on April 1, 2011.

4

26. As Director of Advertising, Marketing, and Sales, Plaintiff's job duties included soliciting business, obtaining/building relationships with clients, and overseeing the advertisement and marketing activities on behalf of Defendant Assael Inc.

27. Throughout Plaintiff's employment, she satisfactorily performed the duties of her job and met the legitimate expectations of her employer.  By way of illustration, Defendant Assael Inc. generated a great deal of income and orders as a result of the advertising campaigns coordinated by and solicitation efforts made by Ms. Stancescu.

*Disparate Treatment in the Terms and Conditions of Plaintiff's Employment*

28. During Plaintiff's employment with Defendant Assael Inc., she was subjected to discriminatory policies and practices motivated by animus toward her national origin and religion, which include but are not limited to the following:

   a) Defendants prohibited employees from speaking the Armenian language in the office. While languages of other national origins such as Indonesian, Filipino, French, Spanish, and Hebrew were permitted to be spoken in the office, Defendants restricted Plaintiff and another Armenian employee from speaking Armenian.  No reason for the prohibition was ever conveyed to Ms. Stancescu.

   b) Defendants revoked an accommodation with regard to Plaintiff's request to celebrate Christmas on January 6, 2011, pursuant to Armenian traditions.  Plaintiff's salary was deducted for taking off from work on January 6, 2011.  In contrast, Defendants permitted non-Armenian, non-Orthodox, Catholic/Christian employees to take off on December 25th for Christmas and allowed Jewish employees to take off days in accordance with their religious observances without negative consequences.  No reason for the adverse treatment was conveyed to Ms. Stancescu.

5

### *Hostile Work Environment*

29. During Plaintiff's tenure with the Company, Defendants also subjected Ms. Stancescu to harassing conduct on the basis of her Armenian national origin and on the basis of religion.

30. By way of illustration, throughout Plaintiff's employment with Defendant Assael Inc., Defendant Gitty Goldman subjected Ms. Stancescu to discriminatory harassment, which included but was not limited to:

    a. stating that Plaintiff was a member of a Muslim terrorist organization;

    b. commenting that Armenians are terrorists, Nazis, gypsies, and/or liars;

    c. telling Plaintiff that she hoped her people died; and

    d. remarking that Defendant Goldman's Israeli army would kill all Armenians.

31. Defendant Goldman tarnished Plaintiff's reputation among Defendant Assael Inc.'s clients in that she conveyed negative lies about Ms. Stancescu to clients within the industry such as the false characterization of Plaintiff as anti-Semitic.

32. Plaintiff regularly complained to her supervisor Defendant Babio about Defendant Goldman's harassing conduct, but Defendants failed to take corrective action.

33. Instead of taking any remedial measures to correct the discriminatory treatment, Defendant Babio ignored Plaintiff's complaints, sometimes stated that Defendant Goldman just "is that way," or berated Plaintiff (even cursing at Ms. Stancescu or calling her a "fat bitch") for raising her concerns. On occasions, Defendant Babio even accused Plaintiff of lying about the discriminatory treatment.

34. When Salvador Assael passed away on April 1, 2011, the discriminatory harassment of Plaintiff by Defendants Goldman and Babio escalated. From that point on, Defendants made harassing comments and screamed at Plaintiff on an almost daily basis.

35. Ms. Stancescu complained to Defendant Lang-Assael about the harassing conduct, but the discriminatory treatment continued unabated.

*Plaintiff's Opposition and Defendants' Retaliatory Action*

36. Plaintiff regularly complained to Defendant Babio about the discriminatory treatment to no avail.  Instead of correcting the conduct complained of, Defendant Babio ignored Plaintiff, berated her, cursed at her, screamed at her and accused her of lying.

37. On multiple occasions, Defendant Babio threatened to fire Plaintiff if she kept complaining about the discriminatory conduct.   Specifically, Defendant Babio dismissively told Ms. Stancescu in response to her complaints, "you know where the door is."

38. Prior to his death, Plaintiff also complained to Salvador Assael himself, but Mr. Assael did not prevent the abusive, discriminatory conduct of Defendants Goldman and Babio.

39. After Mr. Assael passed away, Plaintiff also complained to Defendant Christina Lang-Assael, Mr. Assael's wife and incoming company president.   Although, Defendant Lang-Assael acknowledged Plaintiff's complaints and expressed that Mr. Assael thought highly of her work, Defendant Lang-Assael did not take any measures to correct the discriminatory, harassing, and retaliatory conduct against Ms. Stancescu.

40. On October 21 and 22, 2011, Plaintiff traveled to Chicago for business. While on the business trip, Defendant Goldman continuously called Plaintiff to berate her and embarrass her in front of clients. Plaintiff again complained to management and was, again, ignored.

41. On November 1, 2011, roughly one week after Plaintiff's business trip, and her most recent opposition to the discriminatory treatment, Defendants served Plaintiff with notice of her termination of employment.

42. Specifically, Plaintiff was informed at a meeting with Defendant Lang-Assael and Hyman Schmiel (a consultant for the Company) that her position was being eliminated, effective November 12, 2011.

43. Upon information and belief, Plaintiff's termination of employment was motivated by discriminatory and retaliatory animus.

44. Upon information and belief, Defendants also terminated the employment of another Armenian employee after Plaintiff was fired.

45. As a result of Defendants' discriminatory and retaliatory conduct, Plaintiff has and continues to suffer from emotional distress.

## FIRST CLAIM FOR RELIEF
### (Title VII Violations for Religious and National Origin Discrimination, and Discriminatory Harassment against Defendant Assael Inc.)

46. Plaintiff repeats and realleges the previous paragraphs as if fully set forth herein.

47. Title VII makes it unlawful for an employer to "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion... or national origin;"

48. Defendant Assael Inc., through its agents, engaged in a continuing pattern of unlawful discrimination and harassment.

49. By the acts and practices described above, Defendant Assael Inc. took adverse employment actions based on Plaintiff's membership in a protected class with regard to her compensation, terms, conditions, and privileges of employment by conduct, which includes: deducting a day's pay for her observance of Armenian Christmas holiday, restricting Plaintiff from speaking her native language in the office while permitting other foreign languages to be

spoken, tarnishing her professional reputation in the industry with false negative and derogatory characterizations, and by terminating her employment.

50. Additionally, Title VII defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." By the acts and practices described above, Defendant Assael Inc. failed to accommodate Plaintiff's religious beliefs.

51. By the acts and practices described above, Defendant Assael Inc. discriminated against Plaintiff on the basis of her national origin and perceived Muslim religion by subjecting her to harassment of a severe and pervasive nature effecting the terms, conditions, and privileges of her employment.

52. Defendant Assael Inc. was aware of the discrimination and harassment by the Company's agents' own participation in, observation of, and receipt of employee complaints about the prohibited conduct.

53. Defendant Assael Inc. intentionally refused to investigate and/or take any remedial action to correct the discriminatory/harassing behavior and failed to respond to Plaintiff's complaints.

54. Defendant Assael Inc. knew its actions constituted discrimination and unlawful harassment. Thus, Defendants willfully disregarded Plaintiff's statutorily protected rights.

55. Plaintiff is now suffering mental anguish, pain, suffering and monetary damages as a result of Defendant Assael Inc.'s discrimination and unlawful harassment under Title VII.

## SECOND CLAIM FOR RELIEF
### (Title VII Violations for Retaliation against Defendant Assael Inc.)

56. Plaintiff repeats and realleges the previous paragraphs as if fully set forth herein.

57. Defendant Assael Inc., through its agents, engaged in retaliation.

58. By the acts and practices described above, engaged in retaliatory conduct against Plaintiff for her protected activities, which included opposition to discrimination and harassment.

59. Defendant Assael Inc. knew its actions constituted retaliation. Thus, Defendants willfully disregarded Plaintiff's statutorily protected rights.

60. Plaintiff is now suffering mental anguish, pain, suffering and monetary damages as a result of Defendant Assael Inc.'s retaliatory conduct under Title VII.

## THIRD CLAIM FOR RELIEF
### (NYSHRL Violations for Religion and National Origin Discrimination, and Discriminatory Harassment against all Defendants)

61. Plaintiff repeats and realleges the previous paragraphs as if fully set forth herein.

62. The NYSHRL makes it unlawful to use an individual's "creed" or "national origin" as a basis to "discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

63. By the acts and practices described above, Defendants took adverse employment actions based on Plaintiff's membership in a protected class with regard to her compensation, terms, conditions, and privileges of employment by conduct, which includes: deducting a day's pay for Plaintiff's observance of the Armenian Christmas holiday, restricting Plaintiff from speaking her native language in the office while permitting other foreign languages to be spoken, tarnishing her professional reputation in the industry with false negative and derogatory characterizations, and by terminating her employment.

10

64. Additionally, the NYSHRL makes it unlawful to require an employee to "forego a sincerely

held practice of his or her religion, including but not limited to the observance of any

particular day or days or any portion thereof as a sabbath or other holy day in accordance

with the requirements of his or her religion, unless, after engaging in a bona fide effort," it is

shown that accommodating an employee's sincerely held religious observance or practice

would cause an "undue hardship on the conduct of the employer's business."

65.  By the acts and practices described above, Defendants failed to accommodate Plaintiff's

religious beliefs in that they failed to engage in a bona fide effort to determine whether or not

Plaintiff's request would have imposed an undue hardship on the Company.

66. By the acts and practices described above, Defendants discriminated against Plaintiff on the

basis of her national origin and perceived Muslim religion by subjecting her to harassment of

a severe and pervasive nature effecting the terms, conditions, and privileges of her

employment.

67. Defendants were aware of the discrimination and harassment by their own participation in,

observation of, and receipt of employee complaints about the prohibited conduct.

68. Defendants intentionally refused to investigate and/or take any remedial action to correct the

discriminatory/harassing behavior and failed to respond to Plaintiff's complaints.

69.  Defendants knew their actions constituted discrimination and unlawful harassment.  Thus,

Defendants willfully disregarded Plaintiff's statutorily protected rights.

70. Plaintiff is now suffering mental anguish, pain, suffering and monetary damages as a result of

Defendants' discrimination and unlawful harassment.

11

## FOURTH CLAIM FOR RELIEF
### (NYSHRL Violations for Retaliation against all Defendants)

71. Plaintiff repeats and realleges the previous paragraphs as if fully set forth herein.

72. By the acts and practices described above, Defendants engaged in retaliatory conduct against Plaintiff for her protected activities, which included opposition to discrimination and harassment.

73. Defendants knew their actions constituted retaliation.  Thus, Defendants willfully disregarded Plaintiff's statutorily protected rights.

74. Plaintiff is now suffering mental anguish, pain, suffering and monetary damages as a result of Defendants' retaliatory conduct under the NYSHRL.

## FIFTH CLAIM FOR RELIEF
### (NYCHRL Violations for Religion and National Origin Discrimination, and Discriminatory Harassment against all Defendants)

75. Plaintiff repeats and realleges the previous paragraphs as if fully set forth herein.

76. The NYCHRL makes it unlawful to use a person's "creed" or "national origin" as a basis to "discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

77. By the acts and practices described above, Defendants took adverse employment actions based on Plaintiff's membership in a protected class with regard to her compensation, terms, conditions, and privileges of employment by conduct, which includes: deducting a day's pay for Plaintiff's observance of the Armenian Christmas holiday, restricting Plaintiff from speaking her native language in the office while permitting other foreign languages to be spoken, tarnishing her professional reputation in the industry with false negative and derogatory characterizations, and by terminating her employment.

12

78. The NYCHRL makes it unlawful to require an employee to "forego a practice of, his or her creed or religion, including but not limited to the observance of any particular day or days or any portion thereof as a Sabbath or holy day or the observance of any religious custom or usage, and the employer shall make reasonable accommodation to the religious needs of such person."

79. Additionally, the NYCHRL defines reasonable accommodation to "mean such accommodation to an employee's or prospective employee's religious observance or practice as shall not cause undue hardship in the conduct of the employer's business."

80. The NYCHRL mandates that the "employer shall have the burden of proof to show such hardship."

81. By the acts and practices described above, Defendants failed to accommodate Plaintiff's religious beliefs though her request would not have imposed an undue hardship on the Company.

82. In addition, Defendants subjected Plaintiff to discriminatory and harassing treatment on the basis of her national origin and perceived Muslim religion by treating her less well with regard to the terms, conditions, and privileges of her employment based on Plaintiff's membership to a protected class in violation of the NYCHRL.

83. Defendants were aware of the discrimination and harassment based on their own participation in, observation of, and employee complaints about the prohibited conduct.

84. Defendants intentionally refused to investigate and/or take any remedial action to correct the discriminatory/harassing behavior and failed to respond to Plaintiff's complaints.

85. Pursuant to the NYCHRL, Defendant Assael Inc. is strictly liable for the discriminatory and harassing conduct of the individual Defendants Lang-Assael, Babio, and Goldman.

86. Defendants knew their actions constituted discrimination and unlawful harassment. Thus, Defendants willfully disregarded Plaintiff's statutorily protected rights.

87. Plaintiff is now suffering mental anguish, pain, suffering and monetary damages as a result of Defendants' discrimination and unlawful harassment under the NYCHRL.

### SIXTH CLAIM FOR RELIEF
### (NYCHRL Violations for Retaliation against all Defendants)

88. Plaintiff repeats and realleges the previous paragraphs as if fully set forth herein.

89. By the acts and practices described above, Defendants engaged in retaliatory conduct against Plaintiff for her protected activities, which included opposition to discrimination and harassment.

90. Defendants knew their actions constituted retaliation. Thus, Defendants willfully disregarded Plaintiff's statutorily protected rights.

91. Pursuant to the NYCHRL, Defendant Assael Inc. is strictly liable for the retaliatory conduct of the individual Defendants Lang-Assael, Babio, and Goldman.

92. Plaintiff is now suffering mental anguish, pain, suffering and monetary damages as a result of Defendants' retaliatory conduct under the NYCHRL.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment:

(a) awarding on the First through Sixth Causes of Action, compensatory, punitive, mental anguish and pain and suffering damages, as allowed by law, as a result of Defendants' discriminatory, harassing and retaliatory conduct, in an amount exceeding the jurisdictional requisites;

(b) awarding Plaintiff such interest as allowed by law;

14

(c) awarding Plaintiff her reasonable attorneys' fees and costs as allowed by law; and

(d) granting such other and further relief as this Court deems necessary and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

Dated: July 3, 2013
      New York, New York

Alan Serrins, Esq.
Liane Fisher, Esq.
Ann Macadangdang, Esq.
SERRINS FISHER LLP
*Attorneys for Plaintiff*
233 Broadway, Suite 2340
New York, New York 10279
Tel: (212) 571-0700
Fax: (212) 233-3801

15

Exhibit A

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: | Madeleine Stancescu<br>2506 21st Street, Apt. 1<br>Astoria, NY 11102 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2012-03437** | **John B. Douglass,**<br>**Investigator** | **(212) 336-3765** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

| ☒ | More than 180 days have passed since the filing of this charge. |
| ☐ | Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge. |
| ☒ | The EEOC is terminating its processing of this charge. |
| ☐ | The EEOC will continue to process this charge. |

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

| ☐ | The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost. |
| ☐ | The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time. |

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred** <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

*If you file suit, based on this charge, please send a copy of your court complaint to this office.*

On behalf of the Commission

Enclosures(s)

*Kevin Berg*

**Kevin J. Berry,**
**District Director**

5/7/2013
(Date Mailed)

cc:

| ASSAEL INTERNATIONAL, INC.<br>c/o Jasmin J. Farhangian<br>CARTER LEDYARD & MILBURN L L P<br>Two Wall Street<br>New York, NY 10005 | Liane Fisher, Esq.<br>SERRINS FISHER LLP<br>233 Broadway, Suite 2340<br>New York, NY 10279 |
|---|---|

Enclosure with EEOC
Form 161-B (11/09)

INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**the Genetic Information Nondiscrimination Act (GINA), or the Age**
**Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within**
**90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-
day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to
consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell
him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely
manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as
indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate
State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide
after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short
statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter
alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in
the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some
cases can be brought where relevant employment records are kept, where the employment would have been, or
where the respondent has its main office. If you have simple questions, you usually can get answers from the
office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or
make legal strategy decisions for you.

PRIVATE SUIT RIGHTS    --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back
pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For
example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit
before 7/1/10 -- not 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA
suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.
Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA
claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION    --    **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction
in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be
made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your
efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above,
because such requests do not relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any
questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to
inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide
your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files
are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge
file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be
made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*